D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN
584 Castro Street, Suite 879
San Francisco, California 94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for Plaintiff Io Group, Inc.

E-filing

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC., a California corporation, | CASE NO.: CV 11 1851 HRL |
| Plaintiff, | COMPLAINT: |
| vs. | 1) LANHAM ACT - TRADEMARK INFRINGEMENT; |
| FIESTA CATERING INC., a Barbados corporation, EXPERIENCED INTERNET.COM, INC., a Florida corporation, and CYTEK, LTD., a Barbados Corporation, | 2) LANHAM ACT – FALSE DESIGNATION OF ORIGIN; 3) LANHAM ACT – CYBERPIRACY; 4) UNFAIR BUSINESS PRACTICES - CAL. BUS. & PROF. CODE §17200; AND 5) COMMON LAW INJURY TO BUSINESS REPUTATION; |
| Defendants. | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.  This is an action by Io Group for injunctive relief prohibiting Defendants from further use of Plaintiff's trademark in the marketing and sale of Defendants goods and services and to recover damages for the harm caused by their infringing actions.

2.  Io Group, Inc. is one of the most popular and well-known producers of gay erotica. For over twenty years, Io Group has endeavored to build a brand name that not only stands for

quality products but also for fair dealing, integrity, and reliable customer support. In an industry often portrayed as unethical, establishment of a trustworthy brand provides a significant competitive advantage. Association of its brand names with unethical or unfair practices, especially in the current economic client, can be the death knell for even the most prestigious company.

3. In October of 2001, Io Group developed a product line under the trademark MANPLAY®. In 2004, Io Group filed with the U.S. Patent and Trademark Office (PTO) an application to register the mark and the PTO issued registration on March 7, 2006. A full and true copy of the registration certificate is attached hereto as Exhibit A.

4. In March 2010, Defendants registered the Internet domain name manplay.com to Defendant Experienced Internet. Defendnats launched a brand new online dating and erotic services website under the brand name MANPLAY.COM. In doing so, they adopted Io Group's well-established trade dress in a willful attempt to profit from the brand name recognition and goodwill developed by Io Group, Inc. In an effort to quickly build membership to the site, Defendants have engaged in unseemly and unethical practices that have harmed and continue to harm Plaintiff's business reputation.

## THE PARTIES

5. IO GROUP, INC. is, and at all times mentioned herein was, a California corporation doing business as "ManPlay®," with its principal place of business in San Francisco, California. Io Group produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, etc. under the brands, ManPlay®, TitanMedia®, TitanMen®, TitanMenFresh, and MSR Videos®.

6.

7. Plaintiff is informed and believes and based thereon alleges that Defendant Fiesta Catering, inc. is, a corporation organized under the laws of Barbados, having an address of Global Corporate Center 2 Pleasant View Cave Hill.

8. Plaintiff is informed and believes and based thereon alleges that Defendant Experienced Internet.com, Inc., is and since August 12, 2003 has been, a corporation organized under the laws of the State of Florida, having its principal place of business at 5400 N.W. 23rd Avenue, Tamarac, Florida, 33309. Experienced Internet, Inc. is the name in which the domain name registration for manplay.com is held.

9. Plaintiff is informed and believes and based thereon alleges that Defendant Cytek, Ltd. is a Barbados, Ltd. company having a business address of Cytek Ltd. Suite 204, Building #8, Harbour Industrial Estate, St. Michael, Barbados. The Terms of Use consumers agree to when joining the manplay.com website identify Cytek, Ltd. as the operator of the website.

## JURISDICTION

10. This is a civil action for injunctive relief and damages for Trademark Infringement, False Designation of Origin, and Cyberpiracy arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), Unfair Business Practice arising under California Business and Professions Code § 17200 *et seq.*, and injury to business reputation under California common law.

11. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and (b) and 15 U.S.C. § 1121. This Court has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

12. The Court has personal jurisdiction over Defendants. Defendants have purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws. Plaintiff is informed and believes and based

COMPLAINT

thereon alleges that Defendants solicit, transact, and are doing business within the State of California. Defendants sell membership subscriptions to their website to California residents. Defendants have committed unlawful and tortuous acts both within and outside the State of California causing injury in California, with the knowledge that the harm caused by their torturous actions would be felt in this District. Defendants have infringed and continues to willfully infringe Plaintiff's mark, thus Defendants' acts are expressly aimed against Plaintiff, which is a resident of California. Plaintiff's claims arise out of the conduct that gives rise to personal jurisdiction over Defendants and invocation of personal jurisdiction is reasonable.

## INTRADISTRICT ASSIGNMENT

13. This is a trademark case subject to district-wide assignment under Local Rule 3-2(c).

## VENUE

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and Defendants can be found in this District.

## FACTS COMMON TO ALL CLAIMS

15. Io Group is a brand driven, international, multimedia company that produces and distributes adult-oriented audiovisual works under some of the most well-known and successful trademarks within the gay erotica industry. Io Group is recognized throughout the adult entertainment industry worldwide as being one of the premier gay erotica production companies.

16. Through longstanding use and promotion and though Io Group's ingenuity, the MANPLAY® mark is among one of the most famous within the realm of gay romance and

erotica. This mark, and the goodwill it has come to represent, is an extremely valuable corporate asset of Plaintiff. The threatened and actual infringement and dilution by Defendants of the MANPLAY® mark is causing, and unless enjoined will continue to cause, Plaintiff irreparable harm.

17. Plaintiff is informed and believes and based thereon alleges that on or about March 5, 2010, Defendants acquired and caused to be registered to Defendant ExperiencedInternet.com, Inc's, the domain name MANPLAY.COM. Prior to that time DNR, a company with no affiliation with Defendants held the domain name registration. At the same time, Defendants transferred the DNS records for the domain name to the domain nameservers upon which Experienced Internet maintains its other domain names, NS1.sexsearch.com and NS2.sexsearch.com.

18. Plaintiff is informed and believes and based thereon alleges that at the time they registered the domain name MANPLAY.COM, Defendants knew Io Group held a trademark registration for the mark MANPLAY® and knew Io Group used the mark in connection with, but not limited to, "entertainment in the nature of providing a website featuring adult male sexual and romantic content."

19. Plaintiff is informed and believes and based thereon alleges that DNR held no common law trademark in MANPLAY or MANPLAY.COM as there was no developed website or business being transacted in those names. If any defendant ever did hold a common law trademark, it long ago abandoned any such rights.

20. Plaintiff is informed and believes and based thereon alleges, that Defendants created a logo for the MANPLAY.COM website based entirely on logos created and used by Io Group, Inc. in connection with its corporate name Io Group, In., and its registered marks, TITANMEDIA®, TITANMEN®, TITANLIVE® and MANPLAY®. Examples of the trade

dress Plaintiff uses in association with its registered trademarks are attached hereto as Exhibit B. Each of these examples is taken from letters or specimens filed with the United States Patent and Trademark Office (PTO) and are were accessible to Defendants by and through the PTO's public website.

21. Examples of the trade dress Defendants' use in association with the MANPLAY.COM website are attached hereto as Exhibit C. Defendants derived the logo directly from logos used by Plaintiff in connection with its marks. In fact, Defendant's use of the MANPLAY mark is even more consistent with Io Group, Inc.'s overall corporate look than Io Group's own MANPLAY logo.

22. The website Defendants operate at MANPLAY.COM allows consumers to create unique user profiles for the purpose of meeting other men for romance, dating, and socializing. The website is highly erotic and offers features including an xxx theater, videos on demand, a ManPlay Store, and a DVD store.

23. When a user visits MANPLAY.COM, he is immediately invited to interact with the website and the website interface instructs the user to select the country, state, and city in which he lives. The interface then asks for the user's birth date and instructs the user to select a user name and password and to submit an e-mail address.

24. Once the user selects a screen name and submits an e-mail address, the system sends him an email instructing him to login and activate his account and start using his **free** membership.

25. When the targeted user logs in, the system encourages him to upload a photograph of himself. Through the website, Defendants persuade the user to upload a photograph by stating

the following "fact[s]": "a photo almost guarantees you'll meet someone", "a photo will get you more profile views," and "photos increase the time spent on your profile".

26. Defendants instruct the targeted user, "If you have any questions regarding photo content please consult the Photo/Video guidelines which can be found in the help section." However, there is no link to a "help" section on that page. In order to locate the referenced guidelines, the user must select a link that flashes back and forth between "Upload Video profile" and "Learn more". If the user by chance selects that button, he is taken to a page that offers instructions for Uploading a video. The bottom of the page displays a link "<u>Click here for additional video questions</u>." Finally this takes the user to the "Help" page which contains the Photos/Video section. The section addresses questions about guidelines/restrictions and uploading and deleting photos and videos. It does not address any issues regarding Defendant's rights with regard to exploiting the user's photographs or videos.

27. Defendants then invite the targeted user to provide personal information for their profile such as age, height, weight, interests, and sexual history.

28. According to information found on the website, "[o]nce a profile has been entered into the system it is there permanently" and even the user himself cannot delete it.

29. Once the targeted user signs up for a "free account" and provides photos and/or personal information for a profile, the user learns that the account cannot be used for any significant purpose unless he purchases a membership. The user can look at profiles set up by other users, but he cannot use any of the following features:

    a. send e-mails to other users or read e-mails from other users;

    b. instant message other users or send instant messages to other users;

    c. request "a meet in person";

    d. "view similar members";

    e. block a user;

    f. add a note to a profile;

    g. click on a thumbnail to view a larger version of a picture;

    h. send a flirt;

    i. access the xxx theater, chat rooms, video on demand, the Manplay store, or the DVD store; or

    j. view a profile identified in a search result.

30. If a user does not sign up for a membership subscription, Defendants begin sending the targeted user e-mails on a regular basis. The e-mails are designed to appear as if they come from other members with an interest in communicating with the targeted user for the purposes of socializing or dating. The e-mails claim a member has "sent you a private message," "wants to be your friend," "wants to be added to your friend list," or "wants to meet you in person". However, in order to communicate with the individual who sent the e-mail, the targeted user must purchase a membership. Moreover, the e-mails do not actually come from other users but rather from the operators of the website posing as other users.

31. In order to join the site a user must agree to Defendant's Terms of Use. The Terms of Use are equivalent to nearly fifteen single-spaced pages of rules and regulations. In a section titled Online Emissary, Defendants secure for themselves the right to use all of the data a user enters in his online account, to provide introductions to other Manply.com members.

32. Relying on the broad rights secured through its onerous Terms and Conditions, Defendants then use profiles of unsuspecting individuals and send e-mails to other members who have signed up but have not paid for a subscription. The e-mails claim to be manply.com

members who want to "meet" the individual. However, in order to read the e-mails from the member, the user must first pay for a membership.

33. Plaintiff is informed and believes and based thereon alleges that the vast majority of the individuals who receive introduction e-mails from Defendants' Online Emissaries do not realize that the e-mails actually come from Defendants, using the account data from unsuspecting individuals who created on line profiles and submitted photographs of themselves for the purpose of meeting other men to date.

34. Plaintiff is informed and believes and based thereon alleges that each of the Defendants was and is the agent and representative of the other Defendants, acting within the purpose and scope of said agency and representation. Plaintiff is further informed and believes and based thereon alleges that each of the Defendants authorized and ratified the conduct herein alleged of each of the other Defendants.

## FIRST CLAIM
(Lanham Act -Trademark Infringement)

35. Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 34, inclusive.

36. Plaintiff Io Group, Inc. has applied for and registered the mark MANPLAY® with the United States Patent and Trademark Office.

37. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) provides:

(1) Any person who shall, without the consent of the registrant--
　(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
　(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements

> intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

38. Defendants' unauthorized use of the MANPLAY® mark in connection with products and services that Defendants continue to promote and sell constitutes trademark infringement in violation of 15 U.S.C. § 1114(1) and 1125(a).

39. Without Io Group's consent, Defendants are using the MANPLAY® mark in interstate commerce to promote and sell its services.

40. Defendants provide identical services as Plaintiffs, to the same market, namely, providing gay adult content for viewing via the Internet. Defendants compete directly with Plaintiff.

41. Defendants' use of the MANPLAY® mark in connection with its services is likely to cause harm, and on information and belief has actually caused confusion in the market place by creating the false and erroneous impression that Io Group authorized or licensed Defendants' use of its mark and that Io Group has exercised some degree of control regarding the quality, reliability, and integrity of the services and the conditions or controls under which those services are provided.

42. Defendants are engaging in this course of action willfully and with full knowledge and awareness of the superior trademark rights of Plaintiff, and with the purpose and intent of confusing the relevant trade and public into mistakenly believing that Defendants' services are associated with, affiliated with, or licensed by Plaintiff.

43. Defendants' acts of unfair competition and false advertising have caused and are causing great and irreparable injury to Plaintiff and its relevant trademarks and to the services and goodwill represented thereby, in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving Plaintiff with no adequate remedy at law.

44. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, restraining further acts of infringement and to recover attorneys' fees and any damages proven to have been caused by reason of Defendants' aforesaid infringing acts

## SECOND CLAIM
(Lanham Act – False Designation of Origin)

45. Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 42, inclusive.

46. Section 43 of the Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. §1125(a).

47. Defendants' unauthorized use of the MANPLAY® mark in connection with the services Defendants continue to promote and sell constitutes false designation of origin and false representation in violation of 15 U.S.C. §1125(a).

48. Defendants' use of the MANPLAY® mark in connection with the promotion and sale of its services is likely, and on information and belief has already caused, confusion in the marketplace.

49. Io Group, Inc. has suffered, and unless the Court enjoins Defendants, will continue to suffer, irreparable harm as a result of Defendants' illegal conduct.

50. For these violations to it mark, Plaintiff has no adequate remedy at law.

### THIRD CLAIM
(Lanham Act – Cyberpiracy)

51. Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 50, inclusive.

52. Defendants' bad faith intent to profit from the use of MANPLAY.COM, by using it to promote and sell goods and services that are confusingly similar to Io Group's distinctive MANPLAY® mark constitutes cyberpiracy under 15 U.S.C. § 1125(d).

53. Io Group, Inc. has suffered, and unless the Court enjoins Defendants, Io Group will continue to suffer, irreparable harm as a result of Defendants' cyberpiracy of MANPLAY.COM.

54. Io Group has no adequate remedy at law.

### FOURTH CLAIM
(Unfair Business Practices - Cal. Bus. & Prof. Code §17200)

55. Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 54, inclusive.

56. Defendants' actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200.

57. Pursuant to California Business and Professions Code § 17203, Io Group, Inc. is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair

competition, as well as disgorgement of all of Defendants'' profits associated with this unfair competition.

## FIFTH CLAIM
(Common Law Injury to Business Reputation)

58. Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 57, inclusive.

59. Io Group alleges that Defendants' use of the MANPLAY® mark injures and creates a likelihood of injury to Io Group's business reputation because persons encountering Defendants, their website and their services will believe that they are affiliated with or related to or have the approval of Io Group, and any adverse reaction by the public to Defendants and the quality and integrity of their website and their services and the nature of their business will injure the business reputation of Io Group, Inc. and the goodwill that Io Group enjoys in connection with the MANPLAY® mark.

## JURY DEMAND

60. Plaintiffs hereby demand a jury trial in this case.

## PRAYER

WHEREFORE, Plaintiff respectfully requests judgment as follows:

(1) That the Court enter a judgment declaring that Defendants have:

    a. willfully violated Plaintiffs' registered trademark; and

    b. otherwise injured the business and business reputation of Plaintiff by Defendants' acts and conduct as set forth in this Complaint;

(2) That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in

active concert or participation with it, be enjoined and restrained from further infringing use of the MANPLAY mark;

(3) That the Court order Defendants to pay Plaintiffs' general, special, actual, and statutory damages as follows:

    a. Plaintiffs' damages and defendants' profits or alternatively statutory damages pursuant to 15 U.S.C. §1117; and

    b. Pursuant to California Business and Professions Code §§ 17203 and 17535, and pursuant to the equitable powers of this Court, Plaintiff prays that the Court order Defendants to restore all funds acquired by means or any act or practice found by this Court to be unlawful or fraudulent or to constitute unfair competition under Business and Professions Code §17200 *et seq.*

(7) That the Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to 15 U.S.C. §1117 and Cal. Code Civ. Pro. §1021.5.

(8) That the Court order Defendants to pay pre and post judgment interest according to law; and

(9) That the Court grant to Plaintiff such other and additional relief as is just and proper.

Dated: 4/18/2011

Respectfully submitted,

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN

COMPLAINT

## CERTIFICATION OF INTERESTED PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Io Group, Inc.

Dated: 4/18/2011

Respectfully submitted,

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN
Attorneys for Plaintiffs.